Good morning, Your Honors, and may it please the Court, Colin McBeth on behalf of Devon Carl Jordan-McFeely. I'd like to reserve two minutes for rebuttal, and I'll keep track of my time. Thank you. Your Honors, the District Court enhanced Mr. Jordan-McFeely's sentence on the basis of two prior convictions, one for Nevada robbery, one for Nevada possession of a controlled substance for purpose of sale. Neither enhancement was appropriate, and for that reason remand for resentencing is required. The issue of the Nevada drug statute was argued to a separate panel of this Court in mid-August in the Figueroa Beltran case, and it's my understanding that that opinion, which is first in time, will control the drug statute part of Mr. Jordan-McFeely's case. So I'm happy to answer questions about that statute, but otherwise I'd like to focus on the robbery. I was on that panel, and I think your inclination is correct that we probably would be deferring resolution of that issue until we see how my prior panel resolves that. Right, exactly. Thank you, Your Honor. So for that reason, I'll focus on the robbery statute, unless Your Honors have questions about the drug statute. Do you agree with that approach? Yes. Okay. Yes, I agree. The district court found Nevada robbery was a crime of violence by applying the 2015 guidelines, i.e., the guidelines in effect at the time the offense was committed. This was error. The sentencing guidelines themselves and this Court's cases clearly provide that the district court should apply the version of the guidelines in effect at the time of sentencing. Were you the counsel below? No, I was not, Your Honor. Well, didn't counsel ask for the 2015 version to be applied? Yes, Your Honor. So defense counsel did ask for the 2015 guidelines to be applied, but on the facts of this case, that request constitutes merely forfeiture of the claim we're raising now and not a waiver, and for that reason, this Court can still review for plain error. Forfeiture is the failure to make a timely assertion of a right. A waiver is the intentional relinquishment of a known right. Well, why wasn't that intentional? If he affirmatively asked for those guidelines to be applied, why wasn't that intentional? So this Court, in its prior cases that have had to sort of finesse this difference between forfeiture and waiver, looks at the issue in question on a very particular, specific, granular level and not at a sort of high level of generality. So, for instance, in the Perez case, which we cite in our reply brief, the question there was whether it was the defendant had forfeited or waived his right to a jury instruction about the in relation to element of a 924c offense. Why wouldn't it be invited error? So even if it is invited error, this Court still reviews forfeited invited errors for plain error. That's in the Myers case, among other cases, where this Court says that an error is waived and therefore unreviewable when the defendant has both invited the error and, two, relinquished a known right. So even if it's invited, as long as the error is only forfeited and not waived, this Court can still review for plain error. Why wasn't the right not known? If the counsel knew about the 2015 guidelines and knew about the 2016 guidelines and affirmatively elected the 2015, why isn't that relinquishment of a known right? So it has to do with the level of specificity at which this Court defines the right in question. So as I was saying in Perez, the Court characterized the right as the right to receive that very specific jury instruction about the in relation to element, not as the sort of general high-level right to have proper jury instructions or to have a jury who is structuring the law. But that's a very specific right, the right to the 2015, to apply the 2015 guidelines or the right to apply the 2016 guidelines. How much more specific could it have been? Well, it could be specific. The right in this case, the particular right, is the right to be sentenced under the new definition of extortion under which Nevada robbery no longer qualifies as a crime of violence. The 2016 guidelines are only worth the right to the 2016 guidelines is only worth vindicating for the defendant. It's only worth asserting. But wasn't that the issue at the time? So to sort of answer that question, I think it's important to step back in time and reconstruct the legal landscape at the time. So this was in October of 2016. At that time, the Supreme Court's opinion in Beckles had not yet come out. So there was uncertainty about whether the residual clause in 4B1.2 was void for vagueness. The defendant argued it was. The government conceded it was in this case and in every case across the board. That was the DOJ's position at the time. The district court acted on that assumption. So there was a general understanding among all parties that the residual clause was void for vagueness. And that's important because the defendant's position was guideline commentary is only valid if it's consistent with the text. And once the residual clause drops out of the 4B1.2, robbery, which is enumerated in the commentary of the guideline, is no longer valid because it's not consistent with, it's not an elaboration of the remaining text of the guideline. And there was substantial case law to support that position at the time. The First Circuit held in January of 2016 that once the residual clause is found void for vagueness, the crimes enumerated in the commentary of the guideline are no longer valid. The Seventh Circuit held the same thing in August of 2016 in a unanimous, en banc opinion. So there was substantial case law to support that position. And so there's no evidence in the record that defense counsel was specifically aware of the right to be sentenced under this extortion definition that didn't include the right to, or didn't include Nevada robbery. And this Court does look for affirmative evidence in the record. If you go back and look at Perez, the Court talks several times about, you know, the Court says, quote, we are concerned with evidence in the record that the defendant was aware of the right. Or in Myers, the Court said, on this record, we cannot say that Myers knowingly waived Rule 11.1c. Counsel, if we disagree with you on this argument and determine that the, that this argument was waived, do you lose? If the Court finds the argument was waived, then yes, waived errors are not reviewable, even for plain error. So we're not, we're not pressing that argument. But we do really believe this was a forfeited error because this Court looks at the very specific facts and looks for affirmative evidence in the record that defendant knew about a particular right. And in this case, all the action at the time, based on the government's concession and the uncertainty in the law, all the action was on the residual clause in the 2015 guidelines. So in other words, unless we apply the 2016 version of the guidelines, you lose. Well, our position is that the sort of mix and match approach on which Professor Lopez applied is not a correct reading of Supreme Court precedent. But this Court has, has foreclosed that argument. So we acknowledge that, yes, if you continue to apply that approach, then yes, the 2015 guidelines, we lose under those guidelines. The 2016 guidelines are the correct, the correct guidelines, though. And this Court, in the Al-Faraheen case that I cited to this Court in my 20HA letter, this Court talked about a situation where there was a, quote, misapprehension of the applicable law. And where that's the case, this Court will find forfeiture and not waiver. And that's essentially what we have here. All the parties were under the misapprehension that Johnson invalidated the residual clause in 4B1.2. It turns out after Beckles that was wrong. We know that now, but no one knew it at the time. And so that is what the parties focused on. There was no discussion of does Nevada robbery fall within the new extortion definition in 2016 because that issue just didn't come up. And the Myers case, which I also cited to the Court, does consider the existence of intervening Supreme Court case law to be a relevant consideration in the forfeiture or waiver analysis. In that case, at the time the defendant opted for a judge-led settlement conference in its plea bargain, it wasn't exactly clear whether that was allowed under Rule 111C. Then the Davila case from the Supreme Court came down and said that's categorically impermissible. And this Court said, well, in light of the fact that the law was uncertain then and it's clear now based on intervening case law, we'll find the error was forfeited and not waived. I see I have only two minutes left, so I'd like to save that for rebuttal, if that's okay. All right. Thank you, counsel. Thank you. We'll hear from the government. Good morning. May it please the Court. Good morning, counsel. Elizabeth White for the United States. The government does believe that this reliance on the post-August 2016 amendments was waived. The defendant clearly knew. I mean, the default at sentencing is that you're sentenced under the guidelines that apply at the time of sentencing, unless ex post facto considerations would mean that that would be a lower sentence. And this defendant here, obviously the 2016, the post-August 2016 guidelines were in place. That guideline had the definition of extortion that the defendant is now arguing means that his offense doesn't qualify and was certainly aware of that and specifically said to the court, my client has a right to be sentenced under the pre-amendment guidelines. And the government said, okay, fine, and the judge said, okay, fine, and then he was sentenced. And so as it turns out, all of the arguments that he made, the district court rejected this argument about the commentary to the former guidelines. And then this idea on appeal that Becerra-Lopez is no longer a good law in light of Mathis and Descampes has now been rejected by this court in a published decision. And so really at the end of the day, they asked for it one way, the judge did what they asked for, and now they're up here on appeal saying that the judge plainly erred by doing what they asked the judge to do. So we would say that that was a waiver. In any event, though, I mean, at most, I mean, even if this court were to find no waiver, we would then be put in the area of plain error. And in fact, there was just simply no error at all. And this goes to the argument of the 2016 amendment should have been applied. There wouldn't be plain error under that. No, no, because the amendments didn't change anything. And we step back and we say here's, so this goes to the merits of this argument about the new extortion definition. When we think about extortion, what is extortion? Probably the classic, maybe the quintessential example of extortion in our culture is the mafia protection racket, right? I mean, the guy goes into the shop and says, hey, nice store you have here. Boy, wouldn't it be a shame if something happened to it, right? Give me money or I will burn your store to the ground. That's what we think of as extortion. In the O'Connor case, the Tenth Circuit actually said that several States specifically enacted extortion statutes because their robbery statutes did not cover threats of damage or injury to property. And so that's what extortion is. Now, if the Sentencing Commission in adopting this new definition of extortion had intended to do a complete 180 and exempt from its definition of extortion, the thing that we think of as sort of fundamentally extortion, they would have said so. And they didn't say so. Well, but counsel, wouldn't you agree that the amended guideline does have a more restrictive definition of extortion? Absolutely. And the Sentencing Commission explicitly and specifically explained what it was that they were narrowing. What they said is, they cited in the commentary the Supreme Court's decision in Nardello. And in Nardello, the Supreme Court said extortion means threats, you know, getting someone's property by threats or fear. And in Nardello, the Supreme Court said that that can include fear or threats of nonviolent fear, fear to injury to reputation, public humiliation. The case in Nardello, essentially blackmail. How about threats to property? Right. And what they said, what the commission said is that they intended this amendment narrows the generic definition to limit the offense to those having an element of force or fear of threats of physical injury as opposed to nonviolent threats such as injury to reputation. But is that consistent with the Sara Lopez that appears to encompass threats to property? It is. And this Court actually specifically talked about that in Becerra-Lopez. This Court talked about threats to property as being assumed. Right. But is that consistent with the amendment? That's what I'm saying. Is Becerra-Lopez more encompassing than the new amendment? No. Because what this Court said in Becerra-Lopez, it talked about threats to property and it said that that falls within threats of unlawful injury. Okay. But is that consistent with the commentary? Yes. I guess that's what I'm asking you, whether or not the expansive language in Becerra-Lopez is consistent with the more restrictive definition in the 2016 amendment. Right. And I would say yes. I would say no, there's no problem there, because the commission was absolutely explicit that what they were eliminating was these threats, blackmail-type threats to reputational harm, threats to public humiliation, and they were keeping violent threats. Right. Violent threats, pay me money or I will burn down your store, is a threat of violence. I mean, that is physical harm as opposed to emotional harm, reputational harm, and that's specifically what the commission said they were doing. And in fact, in Becerra-Lopez, there was discussion about this, about injury. I mean, in the defendant's reply brief, they sort of, I guess, mocked the sentencing commission a little bit, saying, well, you wouldn't use the word injury to talk about property. You'd use the word damage. And we assume that the sentencing commission has familiarity with the English language, and you wouldn't use the word injury to talk about. You don't generally use the word injury to talk about property. Well, in fact, in the context of this specific case, that argument is especially meritless because the whole reason we're here, I mean, the whole reason that this question about Nevada robbery is a question is that Nevada robbery talks about taking someone's property by means of fear of injury to the victim's person or property. Right. So the statute that we're interpreting here talks about injury to property. The California statute in Becerra-Lopez defines fear as the fear of unlawful injury to the person or property of the person being robbed. And with respect to the Tenth Circuit, with all due respect to the Tenth Circuit, the Hobbs Act robbery statute says the same thing. I mean, all three of these statutes talk about injury to property. Now, I haven't done a 50-state survey, and so I don't know how many state statutes define robbery specifically in the generic sense of only to persons or this broader sense like Nevada and California does persons or property. But the three that we know of, Nevada, California, and Hobbs Act, use the phrase injury to property. So this idea that you wouldn't use that word, injury to property, well, you know, if they didn't use that, we'd have no, there wouldn't be a legal question here. The question is whether this injury, whether injury to property is physical injury as opposed to nonviolent injury such as threats of injury to reputation, injury to harm. The, in any event, at the very most, what we have here is uncertainty, right? I mean, even the government's position is this is entirely clear because the Commission was absolutely specific about what it was excluding. It cited Nardello, which was about blackmail. It said specifically that it intended to exclude nonviolent threats such as injury to reputation, right? But even if this Court were to find, like the Tenth Circuit found, that there's some ambiguity, that there's a couple of different arguments that could be made, the posture here is plain error. And so our argument is there's no error at all, and certainly any error is not plain. The, I won't, the controlled substance issue is, as you say, deja vu to you because I, because of Figaro Beltran, but I do really just want to make one point about that, and that is about the Luckman case. The question in Luckman, a specific question was whether the 1981 amendments unconstitutionally delegated to the State Board of Pharmacy the legislative power to define the elements of a crime, and the answer was no. Now, the defendants say, oh, that means no, these weren't elements of the crime. But that's not what Luckman says. What Luckman says is no, this wasn't an unconstitutional delegation. The legislature set forth an intelligible principle. The legislature set the, an intelligible principle of what types of substances go into each one of these schedules, set the penalties, and then delegated to the federal system the responsibility and authority of deciding which substances go into which schedules. That's exactly how it's done in the federal system, right? I mean, Congress, in the Controlled Substance Act, set forth the schedules and what kind of drugs go in each schedule, and then delegated to the Attorney General, who in turn delegated to the DEA responsibility and authority for figuring out which drugs go into which schedules. Clearly, in the federal system, the identity of the substance is an element of the offense. It's just not an unconstitutional delegation because the court, because the legislature gave proper guidance. Luckman is about constitutional delegation. It's not about elements. Other than in that little question presented, the word element does not appear anywhere in the decision. That's not what the case was about. Counsel, do you think it might be prudent for us to get the advice of the Nevada Supreme Court rather than us trying to guess as to what those cases mean? I think this Court always has the authority to do that. And obviously you think it would be a good idea. I just don't think it's necessary because the court in Mueller was absolutely clear. Not absolutely clear. If it had been absolutely clear, it would have said it's an element as opposed to a means. Well, it said the sale of each controlled substance requires proof of an additional fact that the other does not. It is the particular identity of the controlled substance. And in fact, they cite four cases for that. And if you look at the cases that they cite, that shows just how broad they intended that ruling to be. Well, the problem is there are no model jury instructions in Nevada. And there are cases that can be read as saying that the jury does not have to indicate what particular controlled substance was involved. I am not familiar with any of those cases. I don't know what cases. The cases that I've seen, I mean, there isn't very much case law on this. Not in the drug context, but generally in the context of making jury findings, Nevada case law does not require specificity regarding the particular means of committing the crime. I think that's a problem. Right. If it's a means. But as I say, I mean, the Court in Muller said these are elements. I mean, these are actually elements of the offense. And they say that the. Well, it didn't say that in the context that we're talking about, whether or not something is an element or a means. It said it in the context of whether or not they could be charged separately, which is a little bit different. But I understand your argument.  All right. Thank you. I'm over my time, unless the Court has anything. Thank you, counsel. Rebottom. And counsel, I had a question actually right off the bat. Okay. If we were to go down the road that Judge Rollinson is suggesting of certifying the California Arbiter at the Nevada Supreme Court, my concern with that is with your client's sentence. Can you take briefly touch on if we were to go down that road, would it end up ultimately benefiting your client, even if you got a result he wanted in light of when he's potentially going to be released? The short answer is it might not benefit him because I don't know, but the certification process, as I understand it, can take quite a long time. Mr. Jordan McFeely is serving a sentence of 96 months, which is the middle of the guideline range. If the Nevada Supreme Court were to hold that that statute is indivisible and therefore shouldn't count, that would be a four-level reduction, which would knock down his guidelines range to 63 to 78 months, the middle of which is about 70 months. At that point, you know, it's pretty close to him being out anyway. And in any event... But there are collateral consequences, though. Oh, no, not really. Not really, because it's a prior, Your Honor. Yeah. In any event, Mathis tells this Court what it should do when there's uncertainty. Mathis says, Taylor demands and imposes a demand for certainty on a sentencing court, and unless there is certainty that a statute is divisible, you stop with the conclusion that the statute is overbroad. And here, the fact that we're arguing about this at a pretty sophisticated level should indicate that there is no certainty and that for that reason you just stop and say the statute's overbroad, you don't apply the enhancement. As for the robbery statute, I'd just like to touch on the merits for a second. The government cites repeatedly in quotes from the Sentencing Commission's explanation of its reasons for the amendment. It seems to me that you are presuming that if the enhancement is not granted, that it necessarily involves a reduction in the sentence. Does it instead necessitate a remand for resentencing? This Court says that whenever the guidelines are miscalculated, that's procedural error that requires remand. Now, what the district court would do on remand, we can't know. There's no way of knowing. Could be the same sentence. Could be. Could be significantly lower. We just don't know. Could be higher. Could be higher. You never know. You never know. Exactly, Your Honor. On the robbery issue, the government quotes and cites extensively to the Sentencing Commission's explanation of its reason for the amendment. But respectfully, that gets the analysis backwards. Analysis starts with the text of the guideline. The text in this case is very clear. It says extortion is obtaining something of value from another through fear of physical injury or threat of physical injury. Injury is simply not a word that people use to describe harms to property. We would never say someone injured a lamp or injured his shoes. Well, she just gave us examples of where the statute said injury to person or property. Well, the fact that those statutes are inelegantly phrased doesn't mean this Court needs to compound the error by ---- No, they're not inelegantly phrased. It should technically say injury to person or damage to property. But in English parlance, it's understood. That would be a more, yeah, a better way of putting it. They were using a shorthand. That's right. Regardless, the point is when you see the word injury by itself, that refers to harms to people. As I said, you don't ---- It's not by itself. Well, in the definition ---- You're making a hypothetical proposition to me. In the definition of extortion, it is by itself, Your Honor. It says fear of physical injury or threat of physical injury. It doesn't say injury to person or injury to person or property or one or the other. It just says injury. And as the Tenth Circuit recognized in the O'Connor case ---- Well, I may be on the Tenth Circuit, but I'm not bound by Tenth Circuit law. No, you're not. Not today. No, you're not, Your Honor. You're not. But I think it was a persuasive and thorough analysis that looked at what the word injury means, and it means harms to people. And that opinion is the ---- Free, free, dear Lord, free at last. As the government noted, in O'Connor, the Tenth Circuit said that historically extortion was used to fill a gap left by robbery statutes that didn't cover harms to property. And that might be true as a matter of background and history, but as a matter of interpreting the plain text of the extortion guideline, the word injury in modern 21st century English means harms to people. Well, counsel, shouldn't we assume that when the Sentencing Commission promulgated the 2016 amendment, it did so with knowledge of how the Ninth Circuit had interpreted extortion in Becerra-Lopez? No, Your Honor, because Becerra-Lopez was interpreted, used a different definition of extortion from the Supreme Court's Nardello case. So you don't think the Sentencing Commission was aware of that? They were certainly aware of it. They said so in their explanation of the reason for the amendment. And they said, we are changing the definition. And they used language that on its face refers to harms to people. Oftentimes when the Sentencing Commission is attempting to correct what it sees as error in the case law, it was specifically so articulated. Why do you think it wasn't articulated in the 2016 amendment that the Sentencing Commission was attempting to correct the misapprehension of the Ninth Circuit in Becerra-Lopez? You know, I don't know, Your Honor, but I think this is why courts are sometimes skeptical of legislative history, is that it's a snapshot of how a few people are thinking at a certain point in time, but it doesn't necessarily capture what the text of a certain statute or guideline or rule actually says. And that's why courts always start with the plain text of the statute or the guideline. And then only if that's ambiguous, only if you can't figure out what that means, do you look at the legislative history. And here you don't need to go to the legislative history because the text is clear on its face. It talks about threat of physical injury. And injury is just not something that you do to property. It's something you do to people. All right. Thank you, counsel. Thank you, Your Honor. Thank you to both counsel for your helpful arguments on this case. The case just argued is submitted for decision by the court. The next case, United States v. Solomon Macias, has been submitted on the briefs. The next case on calendar for argument is West v. Grounds.
judges: Lucero, Rawlinson, Owens